UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| RODNEY SMITH, | : |
| | : |
| Plaintiff, | : |
| v. | :   No. 2:13-cv-00326 |
| | : |
| COMMISSIONER CHARLES RAMSEY; | : |
| PHILADELPHIA POLICE DEPARTMENT; | : |
| P/O SCHEAFFER; P/O SCOTT; P/O JOHNSON; | : |
| P/O WAKEFIELD; P/O COOPER; | : |
| POLICE OFFICER "JOHN DOE"; | : |
| POLICE OFFICER OWEN SCHAFFER; | : |
| POLICE OFFICER KEITH SCOTT: | : |
| POLICE OFFICER ALFONSE JOHNSON; | : |
| POLICE OFFICER JENNIFER WAKEFIELD, | : |
| | : |
| Defendants. | : |

_____

## MEMORANDUM OPINION

**Plaintiff's Request for Sequestration of Defendants' Depositions - Granted**

**Joseph F. Leeson, Jr.**                                                                                                  **May 31, 2016**
**United States District Judge**

On May 4, 2016, the Court held a preliminary pretrial conference to establish a schedule for this action. During the conference, counsel to Plaintiff Rodney Smith requested the entry of a protective order that would restrict who may be present at the depositions of each of the Defendant police officers and prevent the Defendants from learning of each other's testimony until they have all been deposed. The Court invited Smith's counsel to submit a letter to chambers setting forth the basis for his request in further detail and permitted counsel to Defendants an opportunity to respond. Their respective submissions are attached to the order accompanying this Memorandum Opinion.

The following allegations are asserted in Smith's Amended Complaint. On the evening of March 21, 2011, Plaintiff Rodney Smith encountered Defendant Keith Scott, a police officer with the Philadelphia Police Department, on a street in southwest Philadelphia. Compl. ¶¶ 4, 10. As the two approached each other, Officer Scott struck the left side of Smith's face with a hard object before throwing him to the ground and placing him in handcuffs. Id. ¶ 12-13. Shortly thereafter, four other Philadelphia police officers—Defendants Alfonse Johnson, Jennifer Wakefield, Owen Schaffer, and a fourth, unidentified officer—arrived on the scene. Id. ¶ 14. As Smith lay face down, with his hands cuffed behind his back, the five officers kicked him repeatedly in the area of his ribs. Id. ¶ 15. Officer Scott also stomped his foot on Smith's back, and the unidentified officer stepped on the back of Smith's head and pressed his face into the pavement. Id. ¶ 15-16. Those two officers then lifted Smith to his feet, pulling and twisting his fingers in the process (during which Smith "felt and heard his left finger snap"), before leading him away to a waiting police van. Id. ¶ 17. Smith suffered serious injuries to his face, hands, and fingers, and he required treatment at a nearby hospital before his arrest could be processed. Id. ¶ 18. It is unclear what sparked this confrontation.

For good cause, a court may issue an order "designating the persons who may be present while . . . discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). In this district, this power has been used in another case quite like this one to prevent one party's testimony from contaminating another's, whether consciously or subconsciously. In Dade v. Willis, the plaintiff alleged that he was physically abused by two police officers during the course of an arrest, leaving him with injuries that required treatment at a hospital. See Dade, No. 95-6869, 1998 WL 260270, at *1 (E.D. Pa. Apr. 20, 1998). Before deposing the two officers, the plaintiff sought a protective order of the same kind that Smith seeks here. Recognizing that good cause demands more than the

2

"ordinary garden variety or boilerplate 'good cause' facts which will exist in most civil litigation"—particularly when the order would preclude even the parties themselves from attending the depositions—the court pointed to three specific concerns that justified the entry of the order. See id. at *1 (quoting BCI Commc'n Sys., Inc. v. Bell Atlanticom Sys., Inc., 112 F.R.D. 154, 160 (N.D. Ala. 1986)). First, other than the testimony of the officers and the plaintiff, there was a dearth of evidence. The events that occurred were "solely within the knowledge of the three individuals at issue," which meant that the officers' testimony was of paramount importance. Id. at *2. Second, the two defendant-officers, as partners on the police force and co-defendants in the case, shared an interest in the outcome, which enhanced "the risk that the testimony of one [would], either consciously or subconsciously, influence the testimony of the other." Id. at *2-3. Finally, the contrast between the "[p]laintiff's criminal status" and the officers' "color of authority" magnified the challenge the plaintiff faced to prove his allegations in a case that turned on the credibility of the parties, and any alteration of the officers' testimony to smooth out inconsistencies could have dealt the plaintiff's case an insurmountable blow. See id. at *2. These concerns amounted to more than an "inchoate fear" that a failure to restrict access to the depositions could be damaging to the discovery process, which led to the conclusion that "the search for the truth require[d] an order of sequestration." Id. at *3. To ensure that the protective order would have the desired effect, the court prevented the officers' counsel from discussing one officer's testimony with the other until both depositions were complete, and forbade the officers from discussing their testimony with each other or obtaining transcripts of either officer's testimony until that time. See id. at *3-4.

     For similar reasons, the court in McKenna v. City of Phila. imposed these same restrictions, but in this case, it was the plaintiffs, not the defendants, who were sequestered.

See McKenna, Nos. 98-5835, 99-1163, 2000 WL 1781916, at *1 (E.D. Pa. Nov. 9, 2000). The case involved claims by a number of Philadelphia police officers that their supervisors had retaliated against them for opposing a climate of racial hostility and discrimination that had pervaded their precinct. See Moore v. City of Phila., 461 F.3d 331, 334-40 (3d Cir. 2006). Absent from this case was the type of credibility gap that existed between the two sides in Dade, but the court nonetheless issued the same form of protective order, observing that the plaintiff and the defendant officers were the only witnesses to the alleged instances of racial animus and that the plaintiff-officers had a shared interest in the outcome of the case as co-plaintiffs and coworkers in the Philadelphia police department. See McKenna, 2000 WL 1781916, at *1; see also Dunlap v. Reading Co., 30 F.R.D. 129, 131 (E.D. Pa. 1962) (finding "the camaraderie of employees who work together" to be "'good cause' for their separation on their pretrial examination").

      The Defendants do not question the propriety of these decisions. Rather, they contend that this case differs from those, because they have already sat for recorded interviews about the events of this case with internal affairs personnel from the Philadelphia Police Department. They argue that the existence of these prior recorded statements will deter them from subsequently changing their stories based on each other's deposition testimony, and, failing that, Smith could use those statements to impeach their credibility.

      A review of the transcripts of those earlier statements reveals the problem with this argument. None is longer than three pages, and after each officer provided a narrative recollection of the events, each was asked less than fifteen follow-up questions. It would be surprising if the examination by Smith's counsel proves to be as brief as these interviews. More than likely, his counsel will seek to probe the intricacies of each Defendant's recollection of the

night in question, and it is in these intricacies that the potential exists for discovering discrepancies between the Defendants' statements—discrepancies which could be negated, even if subconsciously, if the Defendants are able to learn of each other's testimony. See Dade, 1998 WL 260270, at *2 (observing that allowing the two defendant-officers to learn of each other's deposition testimony could "eliminat[e] inconsistencies that would be more apparent had they not been permitted to be present").

Defendants also express concern for the burden that sequestration would impose on them. They argue that their counsel will have to "arrange separate time slots for all four Defendants in every aspect of the case, including responding to discovery, preparing for depositions and attending depositions." However, the protective order that Smith seeks would not be so sweeping. As in Dade, Smith seeks to have the depositions of each Defendant conducted with no person present other than counsel and a court reporter,[1] and, to ensure that this restriction cannot be circumvented, he also requests that until all of the Defendants have been deposed, their counsel should be forbidden from informing any Defendant about the testimony given by any other Defendant, and the Defendants should be forbidden from discussing the testimony they give with each other and from obtaining transcripts of the depositions. That does not mean that the Defendants must be quarantined from each other for all purposes. These restrictions would not prevent them from meeting with their counsel collectively to prepare for their depositions, nor would these restrictions have any impact on their method of participation in other forms of discovery. The restrictions would be narrowly limited to protect only the substance of the deposition testimony that each Defendant gives. They would also be temporary: once all of the Defendants have been deposed, they would be free to discuss their testimony amongst themselves or with their counsel. Smith's goal is simply to prevent the Defendants from learning

---

[1]   And the Court—though the Court is optimistic that its involvement will not be necessary.

how their fellow Defendants respond to his counsel's questioning, and the restrictions he has proposed are appropriately tailored to avoid being more restrictive than necessary to accomplish that goal.[2]

Accordingly, the Defendants will be sequestered for their depositions in the manner that Smith has proposed. As in Dade, this case turns on the credibility of the parties as the only apparent witnesses, and in light of the fact that he is presently incarcerated and the Defendants are all police officers, Smith is already starting from a disadvantage. While there is no evidence that these Defendants may fabricate their testimony, as partners and co-defendants, the risk that the testimony of one may influence the others is elevated, and the damage that could do to Smith's case is great. Smith's request for a protective order is granted as set forth in greater detail in the accompanying order.

BY THE COURT:


/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge

---

[2]  The effect is that, for a temporary period of time, the contents of each Defendant's deposition testimony would be limited to the Defendants' counsel's eyes (and ears) only. This type of restriction is not uncommon in modern litigation; in fact, it is a "routine feature of civil litigation involving trade secrets," see In re City of N.Y., 607 F.3d 923, 935 (2d Cir. 2010), and is commonly used to safeguard privacy interests, see Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 365 (6th Cir. 1999).