UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY SMITH, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 2:13-cv-00326 |
| | : | |
| COMMISSIONER CHARLES RAMSEY; | : | |
| PHILADELPHIA POLICE DEPARTMENT; | : | |
| P/O SCHEAFFER; P/O SCOTT; P/O JOHNSON; | : | |
| P/O WAKEFIELD; P/O COOPER; | : | |
| POLICE OFFICER "JOHN DOE"; | : | |
| POLICE OFFICER OWEN SCHAFFER; | : | |
| POLICE OFFICER KEITH SCOTT: | : | |
| POLICE OFFICER ALFONSE JOHNSON; | : | |
| POLICE OFFICER JENNIFER WAKEFIELD, | : | |
| | : | |
| Defendants. | : | |

## O R D E R

And now, this 31ˢᵗ day of May, 2016, for the reasons set forth in the Memorandum

Opinion issued this day, **IT IS ORDERED** as follows:

1.   The deposition of each Defendant shall be conducted with no person present other

than the party to be deposed, counsel to any party to this action, and a court reporter.

2.   Counsel to Defendants shall not inform any Defendant of the substance of any

testimony given by any other Defendant, and each Defendant shall not discuss the substance of

the testimony he or she has given with any other Defendant or access a transcript of any other

Defendant's testimony, until the depositions of all Defendants are complete.

BY THE COURT:

JOSEPH F. LEESON, JR.
United States District Judge



Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**CORY A. WARD**

cory.ward@dechert.com
+1 215 994 2051 Direct
+1 215 655 2051 Fax

May 10, 2016

**VIA EMAIL**

The Honorable Joseph F. Leeson, Jr.
Edward N. Cahn Courthouse and Federal Building
504 West Hamilton Street, Suite 3401
Allentown, Pennsylvania 18101

Re: *Smith v. Ramsey, et al.*, E.D. Pa. 13-326, Plaintiff's Request for Sequestration

Dear Judge Leeson:

As noted in our pretrial conference, plaintiff Rodney Smith hereby requests a protective order under Federal Rule of Civil Procedure 26 stating that (1) the only people allowed to attend each defendant's deposition are the deponent, court reporter, and counsel; and (2) defendants' common counsel may not inform defendants, orally or through provision of a transcript, what the other defendants testified to at their depositions; defendants are barred from discussing their deposition testimony with each other until after the completion of the depositions; and defendants are not allowed to obtain a copy of either their own or their co-defendants' deposition transcript until after the completion of all four of the defendants' depositions.

As recognized by district courts in the Eastern District of Pennsylvania, a court may, upon a showing of good cause, issue a protective order requiring that depositions of co-parties be conducted solely in the presence of persons designed by the court under Federal Rule of Civil Procedure Rule 26(c)(1)(E) (formerly Rule 26(c)(5)). *Dade v Willis*, No. 95-6869, 1998 WL 260270 (E.D. Pa. April 20, 1998) (Exhibit 1); *McKenna v. City of Philadelphia, et al.*, No. 98-5835, 2000 WL 1781916 (E.D. Pa. Nov. 9, 2000) (Exhibit 2). Rather than merely asserting an inchoate fear of influence, the movant must justify good cause through "the circumstances of the parties and the issues involved." *Dade*, 1998 WL 260270, at *1.

In *Dade*, the plaintiff asserted various civil rights claims arising from his arrest. 1998 WL 260270, at *1. The plaintiff then moved to sequester the two defendant arresting officers from each other's deposition and to prevent common counsel from informing either defendant about what the other testified to at his deposition. *Id.* The court noted three considerations leading to its order of sequestration: the defendants were partner police officers, standing in stark contrast to the plaintiff with a criminal background; the defendants were the only witnesses to the arrest; and the case hinged entirely on a jury's determination of credibility. *Id.* at *2-*3. As the court recognized, in such a scenario the plaintiff presented more than an inchoate fear—indeed,



the case supported extraordinary circumstances leading the court to grant his motion for sequestration. *Id.* at \*3.

In *McKenna*, the court, while determining whether good cause justified the issuance of a sequestration order, again stressed the central role that credibility determinations would play in the case. 2000 WL 1781916, at \*1 (citing *Dade*, at \*1). For the court, the co-parties' prior relationships as police officers, and the fact that the only witnesses of the alleged misconduct were the parties, provided good cause to grant the movant's motion for sequestration. *Id.*

The circumstances in the case at hand fit squarely with those present in *Dade* and *McKenna*. Rather than merely asserting an inchoate fear of influence, Plaintiff points this Court to the specific circumstances of the parties and issues involved. The four defendants are two pairs of partners in the Philadelphia Police Department. Moreover, the parties are the only witnesses of the arrest giving rise to the Amended Complaint. *See* Exhibit 3, Interviews of Defendants attached to Philadelphia Police Department, Internal Affairs Department, Investigative Report #11-338, Wakefield Interview at 3 (Q: "Do you know any witnesses that I can talk to?" A: "No."); Shaffer Interview at 3 (same); Johnson Interview at 3 (same); Scott Interview at 3 (same). Accordingly, and most importantly, this entire case is set to hinge on the jury's credibility determination of the only witnesses: the parties.

The case at hand provides one additional factor: the extended period of time that has passed since the arrest increases the likelihood that the defendants' testimony will be influenced, even if unintentionally, by other defendants' deposition testimony. As the court recognized in *Dade*, factors increasing the likelihood of influencing a deponent's testimony, even if unintentional, form the basis of good cause to grant a movant's motion for sequestration in a case wholly dependent on the credibility of witnesses. *Dade*, at \*2.

Accordingly, Plaintiff respectfully requests that the Court issue a protective order mirroring those granted in *Dade* and *McKenna*:

1.    That the depositions of the defendants shall be conducted with no person present other than the party to be deposed, counsel, the Court, and court reporter.

2.    Defendants' counsel may not inform the defendants, orally or through provision of a transcript, about what the other defendants testified to at their depositions; defendants shall be barred from discussing their deposition testimony with each other until after the completion of the defendants' depositions; and defendants



The Honorable Joseph F. Leeson, Jr.
May 10, 2016
Page 3

shall not be allowed to obtain a copy of either their own or their co-defendants'
deposition transcripts until after the completion of the defendants' depositions.

Sincerely,

Cory A. Ward

CAW

Enclosures

cc:    Ryan S. Wolf (via email)
       Jonathan Cooper (via email)

# Exhibit 1

Case 2:13-cv-00326-JFL  Document 62  Filed 05/31/16  Page 6 of 52

**Dade v. Willis, Not Reported in F.Supp. (1998)**

1998 WL 260770

1998 WL 260770
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Leroy W. DADE, a/k/a Kevin Branch, Plaintiff,
v.
Officer WILLIS, Defendant.

No. Civ.A. 95–6869.  |  April 20, 1998.

**Attorneys and Law Firms**

Stephen D. Brown, Dechert, Price & Rhoads, Phila, PA,
Cynthia L. Randall, Dechert, Price and Rhoads, Phila, PA, for
Leroy W. Dade, aka, Kevin Branch, plaintiff.

Elise Kraemer, Assistant City Solicitor's Office, Phila, PA,
Jessica B. Sol, City Solicitor's Office, Phila, PA, for Butler,
Officer, and defendant.

Elise Kraemer, Jessica B. Sol, Marcia Berman, Marcia
Berman, Assistant City Solicitor, City of Philadelphia Law
Dept., Philadelphia, PA, for Willis, Officer, defendant.

**MEMORANDUM AND ORDER**

SMITH, J.

\*1 Presently before the court in this case is a Motion for a
Protective Order pursuant to Fed.R.Civ.P. 26(c)(5). For the
reasons set forth below, I will grant the Motion.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff alleges that, on August 9, 1995, he was arrested
by the two defendant officers, Officer Willis and Officer
Butler, at the scene of a burglary. In the process of the arrest,
one of the officers allegedly tripped plaintiff, at which point
his pants fell down. Plaintiff then claims that Officer Butler
pushed him into the curb, thereby causing him to be cut on
his genitals. Upon placing plaintiff in the police car, Officer
Butler allegedly sent his partner away "on errands," during
which time Butler physically abused and severely threatened
plaintiff. Once at the police station, plaintiff claims he waited
several hours before taken to the hospital, where he received
stitches on his genitals and was treated for abrasions on his
forehead.

In December of 1995, plaintiff, acting *pro se,* filed
a complaint, which was subsequently amended upon
appointment of counsel, alleging various civil rights claims.
Presently, the case is in the discovery phase. At issue in
the instant Motion are plaintiff's requests to (1) conduct the
depositions of defendants Butler and Willis with no person
present other than the party to be deposed, counsel and court
reporter, and (2) prevent common counsel for defendants
from informing either defendant about what the other testified
to at his deposition.

**DISCUSSION**

Under Federal Rule of Civil Procedure 26(c)(5), a court may,
on good cause shown, issue a protective order requiring that a
deposition be conducted "with no one present except persons
designated by the court."The underlying policy behind this
rule was clearly articulated in the case of *Dunlap v. Reading
Company,* 30 F.R.D. 129 (E.D.Pa.1962), as follows:

> [S]equestration will deny to the
> dishonest witness the advantage of
> observing the experience of other
> witnesses as they give their testimony
> on direct examination and are
> confronted with contradictions or
> evasions under cross-examination. At
> the least, it will make available
> the raw reactions and the individual
> recollection of each witness unaided
> by the stimulation of the evidence of
> any other witness.

*Id.* at 131.As further extolled in Wigmore's Treatise on
Evidence, "when all allowances are made, it remains true that
the expedient of sequestration is (next to cross-examination)
one of the greatest engines that the skill of man has ever
invented for the detection of liars in a court of justice." 6
Wigmore, EVIDENCE, Chadbourn rev., 1976, sec. 1838.

This authority to sequester witnesses from depositions for
good cause has repeatedly been extended to exclude even
party witnesses. *See Galella v. Onassis,* 487 F.2d 986, 997
(2d Cir.1973); *In re Levine,* 101 B.R. 260, 261 (D.Colo.1989)
(right of one party to test truthfulness of witnesses may
trump the right of party to participate in his/her case).
However, due to the heightened interests of parties in
the proceedings, "factors that might justify exclusion of

Case 2:13-cv-00326-JFL   Document 62   Filed 05/31/16   Page 7 of 52

**Dade v. Willis, Not Reported in F.Supp. (1998)**

1998 WL 260270

non-parties from a deposition might not be sufficient to exclude parties because of the parties' more substantial interests in being present."*Hines v. Wilkinson,* 163 F.R.D. 262, 266 (S.D.Ohio 1995). Consequently, the principle has become well-established that judges may exclude a party from a deposition only with a finding of "extraordinary circumstances." 8 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, sec.2041 at 536 (1994). In making this determination, courts must engage in detailed analyses of the circumstances of the parties and issues involved, and require a specific showing of good cause by the movant. *See, e.g., Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973) (although court has power to exclude a party from a deposition, such an exclusion should be ordered rarely); *BCI Commun. Sys., Inc. v. Bell Atlanticom Sys., Inc.,* 112 F.R.D. 154, 160 (N.D.Ala.1986) (good cause must be based on facts that are more than "ordinary garden variety or boilerplate 'good cause' facts which will exist in most civil litigation"); *Kerschbaumer v. Bell,* 112 F.R.D. 426, 426–427 (D.D.C.1986) (noting that protective order to bar parties from attending depositions should be granted only in very limited circumstances).

**\*2** In *In re Levine,* 101 B.R. 260 (D.Colo.1989), the plaintiff's desire to be able to "test the observation, recollection and communication of each deponent independently," constituted good cause to sequester party deponents when plaintiff alleged fraud and conspiracy to commit fraud. *Id.* at 262*citing* Kostolansky, "Sequestration of Deponents in Civil Litigation," Vol. 15 No. 6, COLORADO LAWYER 1028 (June 1986). The court held that because "[t]here [was] a risk that the deponents' testimony may be influenced, even unintentionally, if they [were] allowed to attend the other witness' deposition," exclusion of the parties was essential. *Id.* (quotations omitted).

Acting under Federal Rule of Civil Procedure in 26(c)(5), the court, in *Beacon v. R.M. Jones Apartment Rentals,* 79 F.R.D. 141 (N.D.Ohio 1978), also sequestered various defendants and corporate officials in a Title VII housing discrimination action. It reasoned that "[q]uestions of credibility are inherent in such actions, and this route, which is the equivalent of an order of separation of witnesses, made routinely in trials, will permit the greatest opportunity for evaluation of the testimony secured."*Id.* Ultimately, good cause was found to be encapsulated in "the subtle and sophisticated questions of whether the defendants have engaged in unlawful discriminatory housing practices." [1] *Id.*

Finally, in *Donaghue v. Nurses Registry, Inc.,* 40 Conn.Supp. 196, 485 A.2d 945 (Conn.Super.1984), the conservator for the named plaintiff, who was injured while under the care of the defendant nurses, sought to sequester the nurses at deposition. Upon recognition that the only available witnesses were the defendant nurses, since the plaintiff was deemed incompetent the court ordered sequestration, reasoning that:

> To allow the defendants to be present at each other's deposition might provide them the opportunity to compare and alter statements to ensure their consistency, thereby frustrating the plaintiffs' efforts to discover the facts. Moreover, the named plaintiff will be unable to contradict the facts.

*Id.* at 946. [2]

The instant matter similarly presents a case where the extraordinary circumstances require sequestration of the party deponents. Plaintiff alleges various civil rights violations caused by the alleged brutality of the defendant police officers. These claims are matters solely within the knowledge of the three individuals at issue here and, consequently, credibility is the crucial issue. Because two of the witnesses are not only partners on the police force, but defendants who possess an interest in the outcome of this case, the risk that the testimony of one will, either consciously or subconciously, influence the testimony of the other is substantially elevated. Permitting Officer Willis to be present during Officer Butler's deposition, and vice versa, would lend an advantage in terms of bolsering each other's stories and eliminating inconsistencies that would be more apparent had they not been permitted to be present Plaintiff's criminal status, coupled with defendants' color of authority, stands as a significant enough credibility obstacle to overcome without sanctioning defendants' potential alteration of their testimony.

**\*3** As an additional note, I recognize that many courts have declined to order sequestration based on a broad and conclusory allegation that, should the witnesses be allowed to attend each other's depositions, they will tailor their testimony to conform to one another. *See, e.g., In re Terra International, Inc.,* 134 F.3d 302 (5th Cir.1998) (conclusory allegation that witness would be inclined to protect each other through senses of "camaraderie" insufficient to establish good cause); *United Incentives, Inc. v. Sea Gull Lighting Products, Inc.,* 1991 WL 209018 (E.D.Pa. Oct.7, 1991)(inchoate fear of influence upon deposition testimony does not establish good

Case 2:13-cv-00326-JFL   Document 62   Filed 05/31/16   Page 8 of 52

**Dade v. Willis, Not Reported in F.Supp. (1998)**

1998 WL 260270

cause); *Kerschbaumer v. Bell,* 112 F.R.D. 426 (D.D.C.1986) (mere assertion that credibility is risked if opposing party's were present at each others' depositions does not support granting of protective order); *Hamon Contractors, Inc. v. Dist. Court,* 877 P.2d 884. 888–889 (Colo.1994) (applying federal law to substantively identical Colo.R.Civ.P. 26(c) (5)). However, the facts in this particular case give rise to more than an inchoate fear. The entire case hinges on a credibility determination which is severely skewed by defendants' status as police officers contrasted with plaintiff's criminal background. Adopting a more realistic and practical approach, I find that, should the defendants be allowed to attend each other's deposition, plaintiff's "day in court" will be deprived of its full effectiveness. In light of these factors, I hold that the search for the truth requires an order of sequestration.

However, to effectively achieve the result desired by this sequestration it would be necessary, and plaintiff has requested, that the court order a ban on oral and written communications between the defendants and their common counsel. Relying on F.R.C.P. 26(c), courts have, upon issuing a sequestration order, often prohibited all communication between counsel and a witness regarding his own or other witnesses' depositions. *See, e.g., Naismith v. The Professional Golfers Association,* 85 F.R.D. 552, 568 (N.D.Ga.1979) (ordering that the parties and attorneys in this case ensure that no witness discuss with anyone his own or any other deposition taken in this case); *Beacon v. R.M. Jones Apartment Rentals.* 79 F.R.D. 141. 142 (N.D.Ohio 1978) (ordering that the deposition of the plaintiff, if taken first, not be disclosed to, or examined by, any of the other persons to be deposed until after their depositions have been concluded). Otherwise, "a circumvention of the [order] would occur where the witnesses indirectly defeat its purpose by discussing testimony they have given ... with other witnesses who are to testify."*United States v. Johnston,* 578 F.2d 1352, 1355 (10th Cir.)*cert. denied,*439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978).

Consequently, the circumstances of the instant matter require that the defendants' common counsel be prohibited from discussing the deposition testimony of one with the other until after the completion of both depositions. Further, to avoid further circumvention of the order, neither defendant shall be allowed to receive a copy of either his own or his co-defendant's deposition transcript until after both depositions have been concluded. While these prohibitions may seem somewhat restrictive, the right of the plaintiff to elicit the uninfluenced, independent testimony from the defendants far outweighs any hardship which they may suffer. Such risks are inherent when co-defendants share common counsel. However, the presence and effective representation of that common counsel at both depositions will also work to mitigate any resulting prejudice.

## ORDER

\*4  AND NOW, to wit, this 20th day of April, 1998, upon consideration of plaintiff, Leroy Dade's Motion for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c)(5), and defendants, Officer Ronald A. Butler, Jr.'s and Officer Herman E. Willis, Jr.'s Response thereto, it is hereby ORDERED that the Motion is GRANTED as follows:

1. The depositions of defendants Ronald A. Butler, Jr. and Herman Edward Willis, Jr. shall be conducted with no person present other than the party to be deposed, counsel and court reporter.

2. Defendants' counsel may not inform either defendant, orally or through provision of a transcript, about what the other testified at his deposition and defendants shall be barred from discussing their deposition testimony with each other until after the completion of both depositions.

3. Neither defendant shall be allowed to obtain a copy of either his own or his co-defendant's deposition transcript until after the completion of both depositions.

It is so ORDERED.

## All Citations

Not Reported in F.Supp., 1998 WL 260270

Footnotes

1    Defendants argue that both *In re Levine* and *Beacon* are distinguishable from this case since the former is specifically limited to cases involving allegations of fraud and conspiracy to commit fraud, and the latter involved only Title VIII housing discrimination cases. The court agrees that these cases do not mirror the instant matter, however, they are representative of what type of facts and circumstances constitute good cause for purposes of FRCP 26(c)(5).

**Dade v. Willis, Not Reported in F.Supp. (1998)**

1998 WL 260270

2    Plaintiff also cite *Dunlap v. Reading Company,* 30 F.R.D. 129 (1962), in support of their argument. However, because that case involved sequestration of non-party witnesses, the reasoning behind the holding is not persuasive on the issues at hand.

**End of Document**                                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 2

McKenna v. City of Philadelphia, Not Reported in F.Supp.2d (2000)

2000 WL 1781916

2000 WL 1781916
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Michael MCKENNA

v.

CITY OF PHILADELPHIA, et al.

Myrna MOORE, et al.

v.

CITY OF PHILADELPHIA, et al.

Nos. Civ.A. 98–5835, Civ.A.
99–1163. | Nov. 9, 2000.

**Attorneys and Law Firms**

Rosemarie Rhodes, Harper & Paul, Phila., PA, Daniel Conner, Abramson & Denenberg, Phila., PA, for Myrna Moore, Plaintiff.

Rosemarie Rhodes, Daniel Conner, (See above), for Sheila Young, Plaintiff.

Rosemarie Rhodes, Daniel Conner, (See above), for Raymond Carnation, Plaintiff.

Rosemarie Rhodes, Daniel Conner, (See above), for William McKenna, Plaintiff.

Rosemarie Rhodes, Daniel Conner, (See above), for Richard Safford, Plaintiff.

Elizabeth A. Malloy, Jill Garfinkle Weitz, (See above), Michael E. Dash, Jr., Klett Lieber Rooney & Schorling, Phila., PA, for City of Philadelphia, Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for John Maroney, Sgt., Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for Frank Bachmeyer, Lt., Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for William Colarulo, Capt., Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for Cullen, Lt., Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for Wilson, Lt., Defendant.

Jill Garfinkle Weitz, (See above), for Joseph O'Connor, Respondent.

Charmaine P.C. McCoullum, Philadelphia, PA, Movant, pro se.

Elizabeth A. Malloy, Jill Garfinkle Weitz, (See above), Michael E. Dash. Jr., Klett Lieber Rooney & Schorling, Phila., PA, for David Hogan, Lt., Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for Frank Mack, Sgt, Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for John Hewitt, Sgt, Defendant.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Michael E. Dash, Jr., (See above), for Joseph Jackson, Sgt, Defendant.

## *MEMORANDUM AND ORDER*

HART, Magistrate J.

**\*1** The Defendants have filed a motion for a protective order to prevent Plaintiffs from attending each other's depositions, discussing their deposition testimony with each other, and reading each other's deposition transcripts, and to prevent Plaintiffs' counsel from informing Plaintiffs about the substance of the deposition testimony of any other Plaintiff until after the Plaintiff (with whom such discussions are had) has been deposed. Plaintiffs' counsel agreed to the sequestration of each deponent during his deposition. The remainder of the Defendants' request remains unresolved. During a telephone call with my chambers, Plaintiffs' counsel informed the court that he objected to the motion, but no written response has been filed despite more than a month elapsing since the filing of the motion.

It is well settled that a court may issue a protective order to sequester witnesses from a deposition. Fed.R.Civ.P. 26(e) (5); *Dade v. Willis,* No. 95–6869, 1998 WL 260270 (E.D.Pa. Apr. 20, 1998); *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973). In excluding parties from a deposition, the court will do so only upon a showing of "extraordinary circumstances." *Dade,* at *1 (citing 8 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, § 2041, at 536 (1994))."In making this determination, courts must engage in detailed analyses of the circumstances of the parties and issues involved, and require a specific showing of good cause

McKenna v. City of Philadelphia, Not Reported in F.Supp.2d (2000)

2000 WL 1781916

by the movant ."*Id.* (citing *Galella,* at 997; *BCI Commun. Sys., Inc. v. Bell Atlanticom Sys., Inc.,* 112 F.R.D. 154, 160 (N.D.Ala.1986); *Kerschbaumer v. Bell,* 112 F.R.D. 426, 426–27 (D.D.C.1986)).

The lynchpin to the determination of good cause involves credibility.

> [S]equestration will deny to the dishonest witness the advantage of observing the experience of other witnesses as they give their testimony on direct examination and are confronted with contradictions or evasions under cross-examination. At the least, it will make available the raw reactions and the individual recollection of each witness unaided by the stimulation of the evidence of any other witness.

*Dade,* at [*]1 (citing *Dunlap v. Reading Company,* 30 F.R.D. 129 (E.D.Pa.1962)). That is not to imply any dishonesty on the part of the plaintiffs. As the Bankruptcy Court in Colorado noted, "[t]here [was] a risk that the deponents' testimony may be influenced, even unintentionally, if they [were] allowed to attend the other witness' deposition."*Dade,* at [*]2 (citing *In re Levine,* 101 B.R. 260 (D.Colo.1989)).

Here, the Plaintiffs have prior relationships, having worked together for the Philadelphia Police Department. Considering that many of the alleged discriminatory/retaliatory incidents occurred in the stationhouse, with the only witnesses being parties to these two cases, we believe that good cause exists for limiting the people permitted to attend each deposition. *SeeDade,* [*]2 (court considered relationship between parties and the fact that the matters were solely within the knowledge of the parties in granting protective order).

[*]2 The Defendants' further request that the deponents (1) not be permitted to discuss their deposition testimony; (2)

not be permitted to read the other depositions; and (3) that counsel not discuss the other depositions with the deponents. These requests merely prohibit the indirect communication of information that they have agreed not to get directly by attending the depositions. The purpose underlying the limitation of witnesses at a deposition would be frustrated if the parties could circumvent the order by such discussions.

Therefore, we will grant the Defendants' motion for a protective order.

### *ORDER*

AND NOW, this 9 Day of November, 2000, upon consideration of the Defendants' Motion for a Protective Order (doc. 37 in C.A. 98–5835) and for the reasons articulated in the accompanying Memorandum, IT IS HEREBY ORDERED that the Motion is GRANTED. IT IS FURTHER ORDERED that:

1. The depositions of Plaintiffs Raymond Carnation, Michael McKenna, William McKenna, Myrna Moore, Richard Safford, and Sheila Young shall be conducted with no person present other than the party to be deposed, counsel for the parties, and the court reporter.

2. Plaintiffs' counsel may not inform any Plaintiff, orally or through provision of a transcript, of the substance of the deposition testimony of any other Plaintiff, and Plaintiffs shall not discuss their deposition testimony with each other, until the completion of each Plaintiff's deposition.

3. No Plaintiff shall obtain a copy of any co-Plaintiff's deposition transcripts until after he/she has been deposed.

### All Citations

Not Reported in F.Supp.2d, 2000 WL 1781916

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 3

## COMPLAINT OF RHONDA SMITH-IAD #11-338

### Lt. Joe Staab #186

Reviewed and Approved By:

C.O., I.A.D. _____

Date _____

D.C. O.P.R _____

Date _____

**STATEMENT OF:**       P/O Jennifer Wakefield #2542 Payr█████████
                        Appointed 6-13-03, Assigned 12-13-04
                        14ᵗʰ District, 3-E squad

**DATE & TIME:**        8-5-11, 12:00 AM

**PLACE:**              Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**         IAD Investigation #11-338

**INTERVIEWED BY:**     Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**        Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was physical abused during his arrest on 3-21-11. Can you tell me what you know about his arrest?

A. My partner & I observed the vehicle drive by us that was used in several robberies. We recognized the tag and activated our lights. The car took off from us at a high rate of speed and we lost sight of it after a couple of blocks. 12 B#4 then observed the vehicle on Woodland ave. and then the car turned down Linmore Street & crashed into a parked car. The two males inside then fled from

1                                          



the vehicle. When I came up to the scene, P/O Johnson & my partner were handcuffing Christopher Stokes. That's when I realized Officer Scott was by himself, so I went up the street and when I got there Officer Scott had already handcuffed Rodney Smith.

Q. Did you have any physical contact with Mr. Smith?
A. No.

Q. Did P/O Scott hit Mr. Smith over the head with his weapon?
A. No.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Was Mr. Smith injured during the arrest?
A. No, but he may have been due to the car accident.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. I don't recall the exact location but he was on the even side of the street closer to 55th.

Q. Where there any other officers were involved in Mr. Smith's arrest?
A. No.

2

JW

Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

## STATEMENT CONCLUDED: 12:05 AM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _P/O Maffud #542_

DATE & TIME: _3-8-11   12:10A_

3

**STATEMENT OF:**   P/O Owen Schaffer #7061 Payroll ▮▮▮▮▮
Appointed 8-14-06, Assigned 3-13-07
12th District, 3-C squad

**DATE & TIME:**   8-4-11, 11:35 PM

**PLACE:**   Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**   IAD Investigation #11-338

**INTERVIEWED BY:**   Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**   Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was physical abused during his arrest on 3-21-11. Can you tell me what you know about his arrest?
A. I remember I was working 12 P4 with P/O Wakefield when I observed a burgundy Volkswagen Passant at 59th & Chester that was used in numerous robberies in the area. The vehicle was also in stolen status. After a brief car pursuit we lost sight of it on the 2000 block of Frazier when the BD team picked it up on the 5500 block of Linmore Street.



1

The BD observed their vehicle after it struck a parked car on the block. By the time we got on the block, the males co-defendant (Stokes) was running towards me with Officer Johnson behind him. We apprehended him, while P/O Scott apprehended Mr. Smith at the other end of the block. We recovered a silver handgun and narcotics from the area where Stokes was.

Q. Did you have any physical contact with Mr. Smith?
A. No.

Q. Did your partner have any contact with Mr. Smith?
A. Not that I know of.

Q. Did P/O Scot hit Mr. Smith over the head with his weapon during the arrest?
A. No.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. no and I did not see anyone do that.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. I'm not sure because he was arrested at the other end of the block.

Q. Did you see any injuries to Mr. Smith?
A. No, I never saw him because I was dealing with my own arrest.



Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

**STATEMENT CONCLUDED:** 11:50 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _____

DATE & TIME: _O8 - 04-11 - 11:52 pm_

3



**STATEMENT OF:**    P/O Alfonse Johnson #1203 Payroll
Appointed 10-29-90, Assigned 3-28-91
12th District, 2-C squad

**DATE & TIME:**    6-29-11, 12:00 AM

**PLACE:**    Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**    IAD Investigation #11-338

**INTERVIEWED BY:**    Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**    Lt. Joseph Staab #188, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda Smith on behalf of her son, Rodney Smith, 20/B/M who alleged her son was physical abused during his arrest on 3-21-11. Can you tell me what you know about his arrest?
A. On that day, we were working 12 BD3 in plainclothes, when we received information about a red Volkswagen that was used in some robberies. The information that radio provided us with was a tag number PA HCP-0935. At about 10:00 PM, RPC #12 P4 came over the radio & stated they spotted that vehicle at 59th & Chester Ave.



1



They attempted to stop the vehicle & the vehicle took of at a high rate of speed. They lost sight of the car in the area. A couple of minutes later, we observed the car at 57 & Woodland Ave. The vehicle actually got behind us on Woodland & made a turn onto 58th Street going southbound.

We eventually got behind the vehicles & followed the car to the 5500 block of Linmore Street. That block is kind of like a cul-de-sac, with one way in & one way out. We went to the other end of the block which is 56th & Linmore to try & cut the car off. When we got to the corner the car never came up the block. That's when we noticed the red Volkswagen was stopped in the middle of the block. The car was resting up against another car.

We exited our vehicle & we walked on foot up the street. At that time, I observed the two males exit the driver's side of the Volkswagen. They then began running towards us. My partner, P/O Scott went after Rodney Smith & I went after Christopher Stokes. When Stokes saw Smith getting arrested, he turned around & started to run westbound on Linmore Street. Other police cars were arriving on the westbound side of Linmore Street. The guy that I arrested then placed a handgun on the ground, when he saw other police units arriving. He ran a little farther and then placed his hands up in the air & I arrested him with P/O Schaffer. I then went back & recovered the gun.

Q. After the Volkswagen took of at a high rate of speed did it crash or was involved in any accidents?
A. Yes, it crashed into a parked vehicle on the 5500 block of Linmore.

Q. Did you have any physical contact with Mr. Smith?
A. No. He was arrested by my partner without incident.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. It was close to the corner on 5500 block of Linmore on the south side of the street.



2



Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. When I ran past him my partner was handcuffing him. Officer Scott was by himself.

Q. Was Mr. Smith injured during this arrest?
A. Not that I know of. Once he was handcuffed he was placed in the back of an EPW & I didn't see him until we had court.

Q. What was the outcome of the court case?
A. Last week we had court & it was held for court.

Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

## STATEMENT CONCLUDED: 4:55 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _____ #1205

DATE & TIME: _____ 6-29-11

3

**STATEMENT OF:**    P/O Keith Scott #3754 Payroll
                     Appointed 6-21-99, Assigned 1-28-00
                     12th District, 2-C squad

**DATE & TIME:**     7-11-11, 1:10 AM

**PLACE:**           Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**      IAD Investigation #11-338

**INTERVIEWED BY:**  Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**     Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to
consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative
Investigation is punishable by ten (10) days suspension to dismissal under Article
1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a
Departmental Administrative Investigation is punishable by ten (10) days
suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda
Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was
physical abused during his arrest on 3-21-11. Can you tell me what you know
about his arrest?

A. On that day, I was assigned to the BD #4 in an unmarked car with Officer
Johnson #1203, when we joined into a pursuit. Officer Schaffer & Officer
Wakefield were pursuing a vehicle that was stolen & involved in an armed
robbery.

1



We were westbound on Woodland Ave, when the vehicle matching the description pulled out of Frazier Street directly behind us. Now both vehicles were going eastbound for about a block. We put out flash information to let everyone knew which way we were going. The vehicle made a right turn onto 56th Street & we made a right turn onto 55th Street. The vehicle went all the way down to Linmore Street, which is kind of like a dead end street. The only thing that you could do would be to make a left turn.

So we went to 55th & Linmore because that would be the only direction for that vehicle to meet us. Once we got to the bottom of 55th & Linmore, you could see two black males had exited the vehicle from the driver's side because the car had been involved in an accident. After they exited their vehicle they ran in our direction while looking backwards.

They ran all the way down to us and at this time, I had my badge displayed around my neck & I identified myself & pulled my weapon and told the males to get down on the ground. One male later identified, as Rodney Smith, stopped & the other male then turned around and started to run westbound on Linmore Street. He was pursued by Officer Johnson. I kept telling Rodney Smith to get on the ground & he just stood there saying, "For what..."

After numerous times telling him to get on the ground, I walked up to him and jerked him by his jacket and got him down to the ground. I believe at this time the male started to resist being handcuffed and Officer Wakefield arrived and we were able to secure him. After he was handcuffed, he refused to get up and started to scream and it took several officers to get him up. He then refused to walk to the patrol car and continued screaming that he was going to sue us and that he did nothing wrong.

Q. Do you recall what your tour was that day?
A. I believe it was 4 x 12 PM.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. It was closer to 55th Street. It was 3 to 4 house from the corner.

2



Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. I believe officer Wakefield assisted me while I handcuffed the male. And after he was handcuffed other officers started to arrive.

Q. Was Mr. Smith injured during this arrest?
A. I did not see any signs of physical injury.

Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

## STATEMENT CONCLUDED: 1:40 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _Kirk Scott_

DATE & TIME: _7-11-11   1:56 PM_

3



CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

Jonathan Cooper
Assistant City Solicitor
Civil Rights Unit
14th Floor
215-683-5448
215-683-5397 (fax)
jonathan.cooper@phila.gov

May 17, 2016

**VIA EMAIL**
Chambers of the Hon. Joseph F. Leeson, Jr.
Edward N. Cahn Courthouse and Federal Building
504 West Hamilton Street, Suite 3401
Allentown, Pennsylvania 18101

Re: **SMITH v. SCOTT, et al., Civ. No. 13-326**

Dear Judge Leeson:

Defendants oppose Plaintiff's request for a protective order barring Defendants from communicating with one another about this case and attending each other's depositions. As set forth below, Plaintiff has failed to demonstrate the existence of extraordinary circumstances warranting the prohibitions he seeks. Additionally, the cases Plaintiff relies on are distinguishable from the case at hand.

Parties to a civil action have the right to participate in their own defense and are generally not subject to sequestration. *See, e.g., In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). A protective order sequestering co-parties from one another's depositions and barring case-related communications among those co-parties should only be issued upon a showing of "extraordinary circumstances." *See Dade v. Willis*, No. 95-6869, 1998 WL 260270, at *1 (E.D. Pa. Apr. 20, 1998) (citations omitted). The party requesting the protective order must make a "particular and specific demonstration of fact" supporting the necessity of the order (s)he seeks. *See In re Terra Intern., Inc.*, 134 F.3d at 306 (citations omitted). Courts typically reject these requests when they are "based on a conclusory allegation or inchoate fear that witnesses who attend each other's depositions will tailor their testimony to conform." *See Veress v. Alumax/Alcoa Mill Products, Inc.*, No. 01-2430, 2002 WL 1022455, at *1 (E.D. Pa. May 20, 2002).

Plaintiff, in support of the order he seeks, relies on two cases involving police officer defendants. *See Dade*, 1998 WL 260720; *McKenna v. City of Philadelphia*, No. 98-5835, 2000 WL 1781916 (E.D. Pa. Nov. 9, 2000). While the underlying facts of those cases may be similar to those of the instant case, those similarities do not make the cases analogous for purposes of the inquiry currently before the Court.

Here, unlike the situations in *Dade* and *McKenna*, the Defendants have authored numerous statements describing the incident giving rise to Plaintiff's complaint. Plaintiff's arrest in this case gave rise to a comprehensive internal affairs investigation (at the request of Plaintiff's mother) on the very same subject as the seminal issue in this case; namely, whether Plaintiff was physically abused during his arrest. *See* Exhibit 1, Letter to Rhonda Smith in Internal Affairs Investigation # 11-0338. As a result, all Defendants not only completed the standard paperwork for an arrest of this nature (i.e. arrest reports, investigation reports, incident reports), but were also interviewed by internal affairs personnel regarding their conduct while arresting Plaintiff. Those interviews were recorded and signed by each Defendant and the transcripts will be produced in discovery. *See* Exhibit 2, Interviews of Defendants in Internal Affairs Investigation # 11-0338.[1]

The existence of these multiple written statements authored by Defendants obviates the need for the protections Plaintiff seeks. Defendants are beholden to the statements they have already made and should they choose to change their stories, Plaintiff will have the opportunity to discover those inconsistencies at deposition and later to cross-examine the officers at trial. Cross-examination is a far more equitable way to address any inconsistencies that may arise than a sweeping order preventing case parties from jointly participating in their own defense.

Additionally, Plaintiff has neither alleged, nor made a showing of, any factual reason to question the credibility of any Defendant in this case. The internal affairs investigation against Defendants was resolved as "unfounded" (*see* Exhibit 1) and there is no demonstrable basis for credibility concerns as to any of these officers. *See In re Terra Intern., Inc.*, 134 F.3d at 306 (noting, in support of refusal to grant sequestration order, that movant provided no "affidavits or other evidence that might provide support" for assertion that parties would be inclined to protect one another); *Kerschbaumer v. Bell*, 112 F.R.D. 426, 427 (D.D.C. 1986) (noting, in support of refusal to grant protective order, that plaintiffs had not "produced evidence showing that defendants have falsified testimony or would be likely to do so").

Finally, an order granting Plaintiff's request would not only prevent Defendants from adequately participating in their own defense, but would be unduly burdensome to Defendants and their counsel. Barring Defendants from meeting collectively with counsel would require counsel to arrange separate time slots for all four Defendants in every aspect of the case, including responding to discovery, preparing for depositions and attending depositions. Although these additional logistical burdens might be justified if a particular need for the relief sought was demonstrated, no such showing has been made here.

Accordingly, Plaintiff has failed to demonstrate the existence of any "extraordinary circumstances" justifying the issuance of the protective order he seeks and Defendants should not be restricted from attending one another's depositions or jointly communicating about the case with one another and/or their counsel.

---

[1] It is also worth noting that on or about the date of Plaintiff's arrest, each Defendant was interviewed by Detectives at the Southwest Detectives Division. Although those interviews do not relate to the issue of force, they specifically relate to the facts of Plaintiff's arrest. *See* Exhibit 3, SWDD Interviews of Defendants.

Very truly yours,

Jon Cooper

Enclosures

cc:     Cory A. Ward (via email)
        Ryan S. Wolf (via email)

# EXHIBIT 1

## COMPLAINT OF RHONDA SMITH-IAD #11-338

**Lt. Joe Staab #186**

**Reviewed and Approved By:**

C.O., I.A.D. _____

Date _____

D.C. O.P.R _____

Date _____



# CITY OF PHILADELPHIA

POLICE DEPARTMENT
HEADQUARTERS, FRANKLIN SQUARE
PHILADELPHIA, PENNSYLVANIA 19106

Charles H. Ramsey
Commissioner

September 23, 2011

Ms. Rhonda Smith
6
P

Dear Ms. Smith,

I am responding for the Police Commissioner with regard to the complaint you filed on behalf of your son, Mr. Rodney Smith, with the Internal Affairs Division on June 8, 2011. An investigation was initiated regarding your allegation that he was physically abused by Police Officer Keith Scott, assigned to the 12th Police District.

Based on the available information and the facts uncovered in the investigation, your allegation is **UNFOUNDED**. You failed to cooperate in the investigation to present your side of the incident.

If you are interested in personally reviewing your case, please call the Internal Affairs Division Administrative Officer, Lieutenant Kevin Long, at 215-685-5008 for an appointment. Your case reference number is 11-0338. The Internal Affairs Division is located at 7790 Dungan Road and business hours are from 9:00 am to 5:00 pm, Monday through Friday.

Sincerely,

Stephen T. Johnson
Deputy Commissioner
Office of Professional Responsibility

cc: District Attorney, Seth Williams
Commanding Officer, 12th Police District
Police Officer Keith Scott #3754, 12th Police District
IAD #11-0338

Sent by Certified Mail 7011 0470 0002 4973 1116

# EXHIBIT 2

**STATEMENT OF:**     P/O Jennifer Wakefield #2542 Payr██████
                      Appointed 6-13-03, Assigned 12-13-04
                      14th District, 3-E squad

**DATE & TIME:**      8-5-11, 12:00 AM

**PLACE:**            Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**       IAD Investigation #11-338

**INTERVIEWED BY:**   Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**      Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to
consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative
Investigation is punishable by ten (10) days suspension to dismissal under
Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a
Departmental Administrative Investigation is punishable by ten (10) days
suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda
Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was
physical abused during his arrest on 3-21-11. Can you tell me what you know
about his arrest?

A. My partner & I observed the vehicle drive by us that was used in several
robberies. We recognized the tag and activated our lights. The car took off from
us at a high rate of speed and we lost sight of it after a couple of blocks. 12 B#4
then observed the vehicle on Woodland ave. and then the car turned down
Linmore Street & crashed into a parked car. The two males inside then fled from

1                          

the vehicle. When I came up to the scene, P/O Johnson & my partner were handcuffing Christopher Stokes. That's when I realized Officer Scott was by himself, so I went up the street and when I got there Officer Scott had already handcuffed Rodney Smith.

Q. Did you have any physical contact with Mr. Smith?
A. No.

Q. Did P/O Scott hit Mr. Smith over the head with his weapon?
A. No.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Was Mr. Smith injured during the arrest?
A. No, but he may have been due to the car accident.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. I don't recall the exact location but he was on the even side of the street closer to 55th.

Q. Where there any other officers were involved in Mr. Smith's arrest?
A. No.

2



Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

**STATEMENT CONCLUDED:** 12:05 AM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: *PO Walker 0542*

DATE & TIME: *8-5-11   12:10A*

3

**STATEMENT OF:**  P/O Owen Schaffer #7061 Payroll
Appointed 8-14-06, Assigned 3-13-07
12ᵗʰ District, 3-C squad

**DATE & TIME:**  8-4-11, 11:35 PM

**PLACE:**  Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**  IAD Investigation #11-338

**INTERVIEWED BY:**  Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**  Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was physical abused during his arrest on 3-21-11. Can you tell me what you know about his arrest?
A. I remember I was working 12 P4 with P/O Wakefield when I observed a burgundy Volkswagen Passant at 59ᵗʰ & Chester that was used in numerous robberies in the area. The vehicle was also in stolen status. After a brief car pursuit we lost sight of it on the 2000 block of Frazier when the BD team picked it up on the 5500 block of Linmore Street.

1

The BD observed their vehicle after it struck a parked car on the block. By the time we got on the block, the males co-defendant (Stokes) was running towards me with Officer Johnson behind him. We apprehended him, while P/O Scott apprehended Mr. Smith at the other end of the block. We recovered a silver handgun and narcotics from the erea where Stokes was.

Q. Did you have any physical contact with Mr. Smith?
A. No.

Q. Did your partner have any contact with Mr. Smith?
A. Not that I know of.

Q. Did P/O Scot hit Mr. Smith over the head with his weapon during the arrest?
A. No.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. no and I did not see anyone do that.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. I'm not sure because he was arrested at the other end of the block.

Q. Did you see any injuries to Mr. Smith?
A. No, I never saw him because I was dealing with my own arrest.



Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

**STATEMENT CONCLUDED:** 11:50 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _____ #7007

DATE & TIME: 08-04-11 - 11:52 pm

3

 

**STATEMENT OF:**      P/O Alfonse Johnson #1203 Payroll
                           Appointed 10-29-90, Assigned 3-28-91
                           12th District, 2-C squad

**DATE & TIME:**      6-29-11, 12:00 AM

**PLACE:**      Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**      IAD Investigation #11-338

**INTERVIEWED BY:**      Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**      Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to
consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative
Investigation is punishable by ten (10) days suspension to dismissal under
Article 1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a
Departmental Administrative Investigation is punishable by ten (10) days
suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda
Smith on behalf of her son, Rodney Smith, 20/B/M who alleged her son was
physical abused during his arrest on 3-21-11. Can you tell me what you know
about his arrest?
A. On that day, we were working 12 BD3 in plainclothes, when we received
information about a red Volkswagen that was used in some robberies. The
information that radio provided us with was a tag number PA HCP-0935. At
about 10:00 PM, RPC #12 P4 came over the radio & stated they spotted that
vehicle at 59th & Chester Ave.



1

They attempted to stop the vehicle & the vehicle took of at a high rate of speed. They lost sight of the car in the area. A couple of minutes later, we observed the car at 57 & Woodland Ave. The vehicle actually got behind us on Woodland & made a turn onto 56th Street going southbound.

We eventually got behind the vehicles & followed the car to the 5500 block of Linmore Street. That block is kind of like a cul-de-sac, with one way in & one way out. We went to the other end of the block which is 56th & Linmore to try & cut the car off. When we got to the corner the car never came up the block. That's when we noticed the red Volkswagen was stopped in the middle of the block. The car was resting up against another car.

We exited our vehicle & we walked on foot up the street. At that time, I observed the two males exit the driver's side of the Volkswagen. They then began running towards us. My partner, P/O Scott went after Rodney Smith & I went after Christopher Stokes. When Stokes saw Smith getting arrested, he turned around & started to run westbound on Linmore Street. Other police cars were arriving on the westbound side of Linmore Street. The guy that I arrested then placed a handgun on the ground, when he saw other police units arriving. He ran a little farther and then placed his hands up in the air & I arrested him with P/O Schaffer. I then went back & recovered the gun.

Q. After the Volkswagen took of at a high rate of speed did it crash or was involved in any accidents?
A. Yes, it crashed into a parked vehicle on the 5500 block of Linmore.

Q. Did you have any physical contact with Mr. Smith?
A. No. He was arrested by my partner without incident.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. It was close to the corner on 5500 block of Linmore on the south side of the street.



2

 

Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. When I ran past him my partner was handcuffing him. Officer Scott was by himself.

Q. Was Mr. Smith injured during this arrest?
A. Not that I know of. Once he was handcuffed he was placed in the back of an EPW & I didn't see him until we had court.

Q. What was the outcome of the court case?
A. Last week we had court & it was held for court.

Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.


**STATEMENT CONCLUDED:** 4:55 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _____ #1205

DATE & TIME: _____6-29-11_____

3

**STATEMENT OF:**     P/O Keith Scott #3754 Payroll
                      Appointed 6-21-99, Assigned 1-28-00
                      12th District, 2-C squad

**DATE & TIME:**      7-11-11, 1:10 AM

**PLACE:**            Internal Affairs Division HQ, 7790 Dungan road

**IN PRESENCE OF:**

**CONCERNING:**       IAD Investigation #11-338

**INTERVIEWED BY:**   Lt. Joseph Staab #186, Internal Affairs Division

**RECORDED BY:**      Lt. Joseph Staab #186, Internal Affairs Division

I will be taking your statement directly onto the word processor.

Q. Are you represented by counsel?
A. No

Q. Have you had at least 72 hours upon notification of your court notice to
consult with your attorney?
A. Yes.

You are reminded that failure to cooperate in a Departmental Administrative
Investigation is punishable by ten (10) days suspension to dismissal under Article
1-008-10 of the Disciplinary Code.

You are also reminded that making a false statement in response to a
Departmental Administrative Investigation is punishable by ten (10) days
suspension to dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this & are you willing to cooperate?
A. Yes.

Q. I'm interviewing you concerning a complaint that was filed by Ms. Rhonda
Smith on behalf of her son, Rodney Smith, 20/B/M, who alleged her son was
physical abused during his arrest on 3-21-11. Can you tell me what you know
about his arrest?

A. On that day, I was assigned to the BD #4 in an unmarked car with Officer
Johnson #1203, when we joined into a pursuit. Officer Schaffer & Officer
Wakefield were pursuing a vehicle that was stolen & involved in an armed
robbery.

1

 

We were westbound on Woodland Ave, when the vehicle matching the description pulled out of Frazier Street directly behind us. Now both vehicles were going eastbound for about a block. We put out flash information to let everyone knew which way we were going. The vehicle made a right turn onto 56th Street & we made a right turn onto 55th Street. The vehicle went all the way down to Linmore Street, which is kind of like a dead end street. The only thing that you could do would be to make a left turn.

So we went to 55th & Linmore because that would be the only direction for that vehicle to meet us. Once we got to the bottom of 55th & Linmore, you could see two black males had exited the vehicle from the driver's side because the car had been involved in an accident. After they exited their vehicle they ran in our direction while looking backwards.

They ran all the way down to us and at this time, I had my badge displayed around my neck & I identified myself & pulled my weapon and told the males to get down on the ground. One male later identified, as Rodney Smith, stopped & the other male then turned around and started to run westbound on Linmore Street. He was pursued by Officer Johnson. I kept telling Rodney Smith to get on the ground & he just stood there saying, "For what..."

After numerous times telling him to get on the ground, I walked up to him and jerked him by his jacket and got him down to the ground. I believe at this time the male started to resist being handcuffed and Officer Wakefield arrived and we were able to secure him. After he was handcuffed, he refused to get up and started to scream and it took several officers to get him up. He then refused to walk to the patrol car and continued screaming that he was going to sue us and that he did nothing wrong.

Q. Do you recall what your tour was that day?
A. I believe it was 4 x 12 PM.

Q. Did you or any other officer beat Mr. Smith in the head with a gun?
A. No.

Q. Did you or any other officer use your baton / ASP during the arrest?
A. No.

Q. Did you or any other officer punch or kick Mr. Smith during this arrest?
A. No.

Q. Was Mr. Smith physically abused in any manner?
A. No.

Q. Can you tell me the exact location of Mr. Smith's arrest?
A. It was closer to 55th Street. It was 3 to 4 house from the corner.

2





Q. Do you know what other officers were involved in Mr. Smith's arrest?
A. I believe officer Wakefield assisted me while I handcuffed the male. And after he was handcuffed other officers started to arrive.

Q. Was Mr. Smith injured during this arrest?
A. I did not see any signs of physical injury.

Q. Do you know of any witnesses that I can talk to?
A. No.

Q. Is there anything else you can add to this statement that has not been addressed in this interview?
A. No.

**STATEMENT CONCLUDED:** 1:40 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _Fred Scott_

DATE & TIME: _7-11-11   1:56 PM_

3

# EXHIBIT 3

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT SWDD | | | CASE# SWDD# INTERVIEWER: Det Kuchinsky #904 | |
|---|---|---|---|---|---|---|
| **NAME** P/O Keith Scott #3754/ ▓▓▓▓2C | | **AGE** | **RACE** | **SEX** | **DOB** | |
| **ADDRESS** 12th District | | **APARTMENT #** | | | **PHONE #** | |
| **NAME OF EMPLOYMENT/SCHOOL** City of Phila | | | | | **SSN#** | |
| **ADDRESS OF EMPLOYMENT/SCHOOL** 750 Race St | | **DEPARTMENT** Police | | | **PHONE #** | |
| **DATES OF PLANNED VACATIONS** | | | | | | |
| **DATES OF PLANNED BUSINESS TRIPS** | | | | | | |
| **NAME OF CLOSE RELATIVE** | | | | | | |
| **ADDRESS** | | | | | **PHONE#** | |
| **PLACE OF INTERVIEW** SWDD | | **DATE** 3/21/11 | | | **TIME** 11:20AM | |
| **BROUGHT IN BY** | | **DATE** | | | **TIME** | |
| **WE ARE QUESTIONING YOU CONCERNING** A series of robberies and stolen auto | | | | | | |
| **WARNINGS GIVEN BY** | | **DATE** | | | **TIME** | |
| **ANSWERS** (1)        (2)        (3) | | (4)        (5) | | | (6)        (7) | |

Q: What happened that brings you here to SWDD?

A: On 3/21/11 about 10:04PM I (recorder) was working plain clothes in an unmarked vehicle as 12BD4 along with my partner P/O Alfonse Johnson #1203,▓▓▓▓ (driver) .We responded to a radio call concerning flash information given by P/O Schaeffer #7061 assigned to uniform/marked RPC 12P4. The P/O and his partner P/O Wakefield #2541 were in pursuit of a Burgundy Volkswagen Passat with dark colored tinted windows. Information received from Police radio on this vehicle was that it was stolen and wanted in connection with a robbery point of gun. The P/Os were pursuing the vehicle E/B on Springfield Ave. They lost sight of the vehicle on Frazier St S/B toward Woodland Ave. We were traveling E/B on Woodland Ave toward Frazier St when the vehicle matching the flash information pulled behind our vehicle briefly then the operator of the Passat made a quick right turn on 56th St toward Paschall Ave. We gave the information to Police radio about sighting the Passat and the direction of travel. My partner made a right turn onto 55th St toward Paschall Ave. We continued on 55th St to Linmore Ave. At that time we observed the Passat stopped in the middle of Linmore Ave. We exited our vehicle. Two black males exited the driver side of the vehicle. They fled on the sidewalk E/B toward me and my partner. The males were running toward us and we identified ourselves as "Police". We said to them, "Show me your hands don't move. Get on the ground." One male later id'ed as Rodney Pickens age 19, looked in our direction. He stopped running. He stood there but refused to get on the ground. I had to grab him and physically place him on the ground. The other B/M later id'ed as Christopher Stokes age 20, ducked and ran in the opposite direction which would be W/B on Linmore Ave. P/O Johnson pursued Stokes. I later found out P/O' Johnson, Wakefield and Schaeffer were able to apprehend Stokes on Linmore Ave near 56th St. I also found out P/O Johnson had recovered a .357 revolver handgun, silver in color with brown grips, which Stokes had discarded during the foot pursuit. After both Stokes and Pickens were in custody we realized they had struck a parked vehicle with the Passat on Linmore Ave in the middle of the block.  Both Stokes and Pickens were transported to the Hospital for minor scrapes and complaint of pain they must have sustained during the auto accident.

| RECORD [ ] YES   [ ] NO | CHECKED BY: |
|---|---|
| REVIEWED BY: | |

75-483

| INVESTIGATION INTERVIEW RECORD *CONTINUATION SHEET* | CITY OF PHILADELPHIA POLICE   DEPARTMENT |
|---|---|

Q: Were any P/O's injured in the incident?
A: No.

Q: Do you know who initiated the pursuit of the Passat?
A: P/O's Schaeffer and Wakefield.

Q: After the Passat made the quick turn onto 56th St from Woodland Ave, did you lose sight of the vehicle?
A: Yes briefly until we saw it again in the middle of Linmore Ave.

Q: Do you know the vehicle tag on the Passat?
A: Yes, HCP0935.

Q: Did either Deft Stokes or Pickens say anything to you?
A: No.

Q: Is the Passat that Stokes and Pickens were in possession of in stolen status?
A: Yes.

Q: Was the gun recovered by P/O Johnson loaded?
A: Yes, it was loaded with 6 (six), live, .357 rounds.

Q: What was the damage to the Passat and the parked vehicle?
A: there was more damage to the parked vehicle that the Passat.

Q: Is there anything else you can add to your interview?
A: No.

*Kiel Scott*
3-21-11

| RECORD [ ] YES   [ ] NO REVIEWED BY: | CHECKED BY: |
|---|---|

75-483

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT | | CASE NO.   11- | | |
|---|---|---|---|---|---|---|
| | | | | INTERVIEWER Det Seidel #907 | | |
| NAMED      P/O JOHNSON #1203 PR# | | AGE | RACE | DOB | | |
| ADDRESS      12ᵗʰ 2C | | APARTMENT NO. | | PHONE NO.      6-3120 | | |
| NAME OF EMPLOYMENT/ SCHOOL      City of Phila | | | | SOC. SEC. NO. | | |
| ADDRESS OF EMPLOYMENT/ SCHOOL      police | | DEPARTMENT      police | | PHONE NO.      215 686-3190 | | |
| DATES OF PLANNED VACATIONS | | | | | | |
| NAME OF CLOSE RELATIVE | | | | | | |
| ADDRESS | | | | PHONE NO. | | |
| PLACE OF INTERVIEW      SWDD | | | | DATE      03/21/11 | | TIME      11:20 PM |
| BROUGHT IN BY      POLICE | | | | DATE      3/21/11 | | TIME      11:00 pm |
| WE ARE QUESTIONING YOU CONCERNING: robbery arrest | | | | | | |
| WARNINGS GIVEN BY: | | | | DATE | | TIME |
| ANSWERS      (1)               (2)               (3) | | (4)          (5) | | (6)          (7) | | |

I am Det Seidel #907; tell me what happened tonight that brings you to SWDD?

On 3/21/11 I was working 4X12 with P/O Scott # 3754 and assigned 12BD4, plainclothes, unmarked vehicle, at approx 10:04 PM we responded to flash info given out by police radio, about a red VW Pasat that was in stolen status and used in a robbery at 5900 Chester Av e 12P4, they were giving out directions of travel and we picked up the vehicle at woodland and Frazier sts. It was driving erratically and at a high rate of speed coming up behind us. The vehicle then turned s/b on 56ᵗʰ St and e/b on 5500 Linmore St. We went to the intersection 55ᵗʰ and Linmore to try to cut them off, the vehicle never exited the block so we exited our vehicle and walked w/b on Linmore St, at that time we observed the vehicle stopped at 5522 Linmore St it was involved with parked silver Mazda on the passenger side. The two males were both exiting from the driver's side. They crossed to the south side of the street and began to run in our direction. They were running e/b and a B/M later identified as Rodney Pickens was running in front. We identified ourselves as Police and the Defendant was taken to the ground by P/O Scott. The second male later identified as Christopher Stokes, knelt down next to a Cadillac, parked 5516, and discarded an object to the ground, got up and began running w/b on Linmore St. I gave chase and he was apprehended approx 50 feet by me and P/O Schaeffer #7061, he was taken to the ground. I went immediately back to the Cadillac and recovered an S&W Model 686 357 mag stainless SER# AFH7132 due to other people coming out of the houses; I picked up the handgun and transported it to SWDD. Other units arrived and secured the VW Passat PA# HCP 0935. The males were transported to MCMC for minor injuries, scratches to their faces apparently they sustained in accident. We took the gun to SWDD where it was placed on PR# 2967767.

Q: Did any police get injured?
A: Not that I know of
Q: Did the males say anything to you?
A: No
Q: Is there anything you'd like to add?
A: No

#1203

| INVESTIGATION INTERVIEW RECORD | | | PHILADELPHIA POLICE DEPARTMENT SWDD | | | CASE# INTERVIEWER: Det M Kuchinsky #904 | |
|---|---|---|---|---|---|---|---|
| NAME P/O Jennifer Wakefield #2542/~~~~~~~~ | | | AGE | RACE | SEX | DOB | |
| ADDRESS 12th District Plt 3F | | | APARTMENT # | | | PHONE # | |
| NAME OF EMPLOYMENT/SCHOOL City Of Phila. | | | | | | SSN# | |
| ADDRESS OF EMPLOYMENT/SCHOOL 750 Race St | | | DEPARTMENT Police | | | PHONE # | |
| DATES OF PLANNED VACATIONS | | | | | | | |
| DATES OF PLANNED BUSINESS TRIPS | | | | | | | |
| NAME OF CLOSE RELATIVE | | | | | | | |
| ADDRESS | | | | | | PHONE# | |
| PLACE OF INTERVIEW Southwest Detective Division | | | DATE 3/21/11 | | | TIME 11:55PM | |
| BROUGHT IN BY | | | DATE | | | TIME | |
| WE ARE QUESTIONING YOU CONCERNING A series of Robberies and a stolen auto (Volkswagon Passat) | | | | | | | |
| WARNINGS GIVEN BY | | | DATE | | | TIME | |
| ANSWERS (1) (2) (3) | | | (4) | (5) | | (6) (7) | |

Q: What happened that brings you here to SWDD?

A: On 3/21/11 approx 10:04PM, I (Recorder) was working in full uniform in marked unit RPC# 12P4, along with my partner P/O Schaeffer #7061/~~~~~~~~ (Driver). We were traveling S/B on 59th St toward Chester Ave when we observed a burgundy Volkswagen Passat Pa Tag: HCP0935. The Operator of the Passat made a left turn onto 59th St from Chester Ave. We were aware from Police radio broadcasts that the Passat was in stolen status and was involved in a gun point robbery on 3/20/11. We made a U-turn. After we got behind the Passat and activated our light and sirens, the operator of the Passat began to increase speed and refused to stop. The operator of the Passat made a right turn on Springfield Ave. P/O Schaeffer went over Police radio to announce our location, a description of the Passat and the fact we were attempting to stop the vehicle but the driver was refusing. The Operator made a right turn onto 58th St. He made a left turn onto Chester Ave. The entire time we were behind the vehicle with our lights and sirens activated and informing Police radio of our constant location. The Operator then made a right turn onto Frazier St. He continued to travel at a high rate of speed. He made a left turn onto Greenway Ave. then another right turn onto 56th St. At that time we lost sight of the Passat. From Police radio we heard that plain clothes P/O's Johnson and Scott on 12BD4 observed the Passat traveling on 56th St near Paschall Ave. then we heard P/O's Johnson and Scott say they had the Passat sighted stopped on Linmore Ave. We pulled our vehicle onto the 5500 block of Linmore Ave. We observed the Passat was involved in an auto accident with a parked car (silver Mazda) in front of 5522 Linmore Ave. I observed P/O Johnson has a B/M, id'ed as Christopher stopped and in custody in the middle of the 5500 block of Linmore Ave. I walked down Linmore Ave toward 55th St. I observed P/O Scott had a B/M, later id'ed as Rodney Pickens, stopped and in custody. I had found out that P/O Johnson had observed Deft Stokes discard a .357 revolver handgun, silver in color with brown grips. The recovered gun was loaded with six (6), live .357 rounds. P/o Schaeffer recovered a short distance from where the gun was recovered, 1 (one) clear plastic sandwich bag containing a green weed substance, alleged Marijuana.

Q: Did you see Deft Stokes discard a handgun?

A: No, P/O Johnson observed his discard and subsequently recovered the handgun and rounds. I stayed mostly with P/O Scott and P/O Schaeffer stayed with P/O Johnson.

Q: How long did the pursuit go on before the Defts were apprehended and placed in custody?
A: About 3 minutes. It wasn't long at all.

| RECORD [ ] YES [ ] NO | CHECKED BY: |
|---|---|
| REVIEWED BY: | |

75-483

PAGE #2 OF

**INVESTIGATION INTERVIEW RECORD**
*CONTINUATION SHEET*

CITY OF PHILADELPHIA
**POLICE   DEPARTMENT**

Q: Do you know the VIN on the Volkswagen Passat?
A: Reading from paperwork: WVWMD23B1YP298169. It's a 2000 Volkswagen. It was stolen out of Darby Pa I believe it was taken on March 9th 2011.

Q: Where is the car now?
A: It's still on the 5500 block of Linmore Ave being held for Police tow.

Q: Are you aware of any robberies committed in Southwest Phila involving flash on the Offender(s) operating a Volkswagen Passat, burgundy in color?
A: Yes, there was a robbery at 61st and Passyunk, outside the Purple Orchid Bar, on 3/20/11 with flash of a burgundy Passat with three Offenders in it. Also at 56th and Locust Sts, I'm not sure of the exact date of that robbery I believe it was before the 3/20/11 robbery. Also the Passat may have been involved in a robbery on 3/21/11 at 61st and Passyunk Ave, outside the Purple Orchid Bar. I took that particular report. The Complaint told me during that robbery there was a heavyset dark skinned male who was in possession of a long silver barrel gun. He also said there was a thin Offender who looked to be in his early 20's and that's the one who went through his pockets while the heavyset male held the gun on his. He also said the offenders were in a burgundy colored vehicle.

Q: What was taken from that male?
A: An AT&T SAMSUNG cell phone, a black Tommy Hillfiger wallet with ID credit cards and $260.00USC. Also taken was a set of car keys for his girl friend's PT cruiser car.

Q: Is there anything else you can add to your interview?
A: No.

*[signature]* 2542   3-22-11

| RECORD | CHECKED BY: |
| [ ] YES   [ ] NO | |
| REVIEWED BY: | |

75-483

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT | | CASE NO. 11- | | |
|---|---|---|---|---|---|---|
| | | | | INTERVIEWER Det Seidel #907 | | |
| NAMED P/O Scheaffer #7061 PR# | | AGE | RACE | DOB | | |
| ADDRESS 12th 3F | | APARTMENT NO. | | PHONE NO. 6-3120 | | |
| NAME OF EMPLOYMENT/ SCHOOL City of Phila | | | | SOC. SEC. NO. | | |
| ADDRESS OF EMPLOYMENT/ SCHOOL police | | DEPARTMENT police | | PHONE NO. 215 686-3120 | | |
| DATES OF PLANNED VACATIONS | | | | | | |
| NAME OF CLOSE RELATIVE | | | | | | |
| ADDRESS | | | | PHONE NO. | | |
| PLACE OF INTERVIEW SWDD | | | | DATE 03/22/11 | | TIME 12:40 AM |
| BROUGHT IN BY POLICE | | | | DATE | | TIME |
| WE ARE QUESTIONING YOU CONCERNING: ARREST FOR ROBBERY/STOLEN AUTO | | | | | | |
| WARNINGS GIVEN BY: | | | | DATE | | TIME |
| ANSWERS (1) | (2) | (3) | (4) | (5) | (6) | (7) |

I am Det Seidel #907; tell me what happened that brings you to SWDD?

On 3/21/11 at approx 10:04 PM I was working 12P4 with my partner P/O Wakefield # 2542 uniform in a marked patrol car 8Px4A and in the area of 59th and Chester. We driving s/b on 59th St I was operator and observed a burgundy VW Passat on Chester make a left on 59th St from Chester, northbound, as I turned around I observed the PA tag HCP 0935 which I knew from the night before to be stolen status and vehicle was used in a robbery, GRM over J band earlier tonight. I made a U-turn and activated my lights and siren, the vehicle made a right on Springfield Ave going e/b , then a right on 57th St. going southbound, no signal or stopping at any location, it was traveling at a high rate of speed. We were putting out the flash information and direction of travel. The vehicle made a left onto Chester Ave going e/b, then a quick right s/b on Frazier St, the vehicle was going s/b on Frazier at a high rate of speed and then e/b on Greenway Ave at a rate of speed, and I lost sight of it. 12BD4 said they picked up the vehicle at 56th and Paschal Ave and observed it go down 5500 Linmore St. I observed 12BD 4 at 55th and Linmore St exit their vehicle. I immediately went to 56th and Linmore St, it only goes between 55th and 56th St. I entered at 56th and Linmore, from 56th St and observed P/O Johnson running towards a B/M later id'd as Christopher Stokes, at that time he was running toewards me and he put his hands up and got on the ground and he was handcuffed. I observed P/O Johnson recover a silver handgun from behind a gray Cadillac in front of 5516 Linmore Ave. I recovered a clear sandwich bag containing alleged marijuana from in front of the same Cadillac (No tag) VIN # 1G6KD54Y1YU312801. The VW Passat was secured, guard for prints, it was involved with a park unattended silver Mazda PA# HSC0153, the Defts were transported to MCMC for treatment of minor scrapes. The narcotics were placed on PR# 2967768

Q: Were any police injured during the incident?
A: No
Q: Is there anything else you'd like to add?
A: No

P/O Owen ffln #70co1